IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

COREY MORGAN,                                    :
                                                 :
            Plaintiff,                           :
                                                 :
      v.                                         :        CIVIL ACTION NO.
                                                 :        1:05-CV-1576-JOF
FULTON COUNTY SHERIFF'S                          :
DEPARTMENT, et al.,                              :
                                                 :
            Defendants.                          :

## OPINION AND ORDER

This matter is before the court on Defendants' motion for leave to file excess pages
[33] and motion for summary judgment [34].[1]

I.    **Background**

      A.    **Procedural History**

      On June 15, 2005, Plaintiff, Corey Morgan, filed suit against Defendants, Fulton
County Sheriff's Department, Fulton County, Georgia, Deputy Sheriff "Joe" King,
individually and in his official capacity as a deputy of Fulton County Sheriff's Department,
Deputy Sheriff John Doe 1, and Deputy Sheriff John Doe 2, individually and in their official

---

[1] For good cause shown the court GRANTS Defendants' motion for leave to file
excess pages [33].

capacity as deputies of Fulton County Sheriff's Department. Plaintiff's complaint raised claims of excessive force, deprivation of medical treatment and assistance, and various state law claims including negligence, battery, assault, intentional infliction of emotional distress, false imprisonment, invasion of privacy, and intrusion into Plaintiff's solitude and seclusion. On June 21, 2005, Plaintiff filed a motion to amend his complaint to add Deputy Sheriff George King as a defendant in this action. Plaintiff apparently incorrectly named Defendant George King as Defendant Joe King in his initial complaint. The court allowed Plaintiff to amend his complaint on October 14, 2005, and to add Deputy Sheriff George King as a Defendant in this matter. Plaintiff filed an amended complaint on October 17, 2005.[2] Plaintiff brought this action against Deputy Sheriff George King in both his individual capacity and in his official capacity as a deputy of Fulton County Sheriff's Department. On August 31, 2006, Defendants filed a motion for summary judgment.

B.      Facts[3]

_____

[2]In the heading to Plaintiff's amended complaint, Sheriff "Joe" King is still listed as a Defendant. The court finds that this caption is in error as Plaintiff in his motion to amend specifically stated that he had erroneously named Defendant George King with the name Joe King. Therefore, the court DIRECTS the Clerk of the Court to terminate Joe King as a Defendant in this matter.

[3]The court draws the undisputed facts from the following: Defendants' Statement of Undisputed Material Facts and Plaintiff's Responses to Defendants' Statement of Material Facts. When Plaintiff has disputed a specific fact and pointed to evidence in the record that supports his version of events, the court has viewed all evidence and factual inferences in the light most favorable to Plaintiff, as required on a defendant's motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986);

2

Plaintiff, a mentally impaired man, was incarcerated at the Fulton County Jail in June 2003 and was held at the jail until June 27, 2003.[4]  It is contended that during this period, while in the Fulton County Jail, Defendant King and other unidentified officers handcuffed Plaintiff, placed him inside a closet, and inserted a broom into his rectum.  He reported the incident to his lawyer, Susan Wardell, on June 27, 2003.  The same day Plaintiff was taken to Grady Memorial Hospital for a physical examination.

Dr. Prystowsky, the doctor who examined Plaintiff, uncovered no rectal bleeding, rectal pain, bruises or cuts.  Further examination yielded that Plaintiff maintained a full range of motion in all of his extremities, and there was no blood in his stool, even on a microscopic level.  Dr. Prystowsky uncovered no evidence of lesions, bruises, or fissures around Plaintiff's anus during his rectal exam.  Dr. Prystowsky also stated that a two-day period is a very short amount of time for there to be any kind of healing.  After his medical examination at Grady Memorial Hospital, Plaintiff was taken to Georgia Regional Hospital.

## C.    Contentions

---

*McCabe v. Sharrett*, 12 F.3d 1558, 1560 (11th Cir. 1994); *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 469 (11th Cir. 1993).  Accordingly, the facts are either not disputed or are viewed in the light most favorable to Plaintiff.

[4]Although Plaintiff objects to the characterization that Plaintiff was incarcerated contending that due to his mental status he was merely awaiting placement in a group mental home, the court states that he was incarcerated simply to show that he was not able to leave the jail of his own free will.

AO 72A
(Rev.8/82)

First, Defendants contend that the court should grant summary judgment to all Defendants as Plaintiff has failed to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997(e)(a).   Moreover, Defendants contend that this court should dismiss Plaintiff's section 1983 claims against Defendant Fulton County as Plaintiff has failed to show municipal liability.   Defendant Fulton County contends that any state law claims against Fulton County should be dismissed because Defendant Fulton County has state sovereign immunity and Plaintiff failed to plead compliance with anti-litem notification requirements in his complaint.

Defendants also claim that Defendant King is entitled to sovereign immunity under the Eleventh Amendment.   Defendants contend that this court should grant summary judgment to Defendant King on Plaintiff's medical care claim because Plaintiff has not shown that Defendant King was deliberately indifferent to a substantial risk.   Further, Defendants contend that Defendant King is entitled to summary judgment on Plaintiff's excessive force claim due to inconsistencies in his claims and the fact that his claims are not supported by the doctor who examined him.   Finally, Defendants contend that Defendant King is entitled to qualified immunity.

Plaintiff responds to these assertions by stating that he is not required to exhaust his administrative remedies as he was not a prisoner at the time he filed the current suit, and thus 42 U.S.C. § 1997(e)(a) does not apply to him.   With regard to Defendant Fulton

4

County, Plaintiff contends that this court can judicially notice a pattern or custom of being deliberately indifferent to abuse of prisoners from a report in the *Fulton County Daily Report* and two pending cases before the Northern District of Georgia. Plaintiff also contends that he complied with the anti-litem notice requirements. With regard to Defendant King, Plaintiff contends that the court must take the Plaintiff's statements as true and Defendant King's actions constituted excessive force. Plaintiff also contends that Defendant King is not entitled to qualified immunity.

## II.     Discussion[5]

### A.     Failure to Exhaust Administrative Remedies

Defendants contend that this court should dismiss Plaintiff's claims pursuant to 42 U.S.C. § 1997(e)(a) because Plaintiff failed to exhaust his administrative remedies. Section 1997(e)(a) states, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Defendants contend that Fulton County Jail has a comprehensive grievance procedure, and because Plaintiff filed no grievances while incarcerated in the Fulton County Jail, he has not exhausted his administrative remedies.

---

[5]Plaintiff's claims against the John Doe defendants are DISMISSED without prejudice pursuant to Fed. R. Civ. P. 4(m).

5

The Eleventh Circuit Court of Appeals has stated that the trial court must look at the at the filing of the action or when the action is brought in order to determine if 42 U.S.C. § 1997(e)(a) applies. *Harris v. Garner*, 216 F.3d 970 (11th Cir. 2000) ("It is confinement status at the time the lawsuit is 'brought,' i.e., filed, that matters."); *see also Greig v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999); *Doe v. Washington County,* 150 F.3d 920, 924 (8th Cir. 1998); *Kerr v. Puckett*, 138 F.3d 321, 322-23 (7th Cir.1998). Although Defendants state that Plaintiff was a prisoner at the time of the alleged incidents, Defendants have not presented any evidence that Plaintiff was a prisoner at the time of the filing of this lawsuit. Therefore, the court cannot find that Plaintiff was required to exhaust administrative remedies prior to filing suit.

### B.    Defendant Fulton County Sheriff's Department

The Eleventh Circuit has noted that "[s]heriff's departments and police departments are not usually considered legal entities subject to suit . . . ." *Lawal v. Fowler*, 196 Fed. Appx. 765, 768 (11th Cir. 2006); *Lovelace v. DeKalb Cent. Prob.*, 144 Fed. Appx. 793, 795 (11th Cir. 2005). Therefore, the court finds that Defendant Fulton County Sheriff's Department is not an entity subject to suit. Therefore, the court GRANTS Defendant's motion for summary judgment with respect to Defendant Fulton County Sheriff's Department.

### C.    Defendant Fulton County

### 1.   Municipal Liability under § 1983

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that municipalities (and other local government entities) are "persons" within the meaning of 42 U.S.C. § 1983.   However, the Court consistently has declined to hold municipalities liable under a theory of respondeat superior.   *See*, *e.g.*, *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986).   Rather, a plaintiff must demonstrate a municipal "policy" or "custom" that caused the plaintiff's injury in order to establish a municipality's liability.   *See*, *e.g.*, *Canton v. Harris*, 489 U.S. 378, 389 (1989).   The plaintiff must also show that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Board of Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original).   To impose liability on Fulton County for violating a constitutional right under section 1983, Plaintiff must show (1) that his constitutional rights were violated; (2) that Fulton County had a policy or custom that constituted a deliberate indifference to his constitutional right; and (3) that the violation was caused by the policy or custom.   *See Canton*, 489 U.S. at 388.

In *Wayne v. Jarvis*, 197 F.3d 1098 (11th Cir. 1999), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003), the court further explicated the standard for establishing municipal liability.   "[A] plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the

7

plaintiff's injury." *Id.* at 1105 (quotations and citations omitted). "A custom is a practice that is so settled and permanent that it takes on the force of law." *Id.* "To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality." *Id.* "A plaintiff must show that the municipal action was taken with the requisite degree of culpability, i.e., that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences." *Davis v. DeKalb County Sch. Dist.*, 233 F.3d 1367, 1375-76 (11th Cir. 2000).

Plaintiff tries to argue that Defendant Fulton County has an established custom or policy of being deliberately indifferent to abuse of prisoners. Plaintiff directs the court to an article written in the *Fulton County Daily Report*. Further, Plaintiff cites two cases currently before the Northern District of Georgia and contends that "[t]his court may take judicial notice of the pattern of similar instances in other pending litigation against the Jail." The court finds that Plaintiff has offered insufficient evidence to support a claim that Defendant Fulton County had an established custom or policy of being deliberately indifferent to abuse of prisoners. An unsubstantiated newspaper article and allegations made in pending litigation are not sufficient for this court to take judicial notice of the allegations, nor are they evidence of a custom or policy that can withstand a summary judgment motion.

Therefore, the court GRANTS Defendant's motion for summary judgment on Plaintiff's section 1983 claim against Defendant Fulton County.

## 2.    Anti-Litem Notice

Defendant Fulton County also contends that Plaintiff's state law claims against Defendant Fulton County are barred because Plaintiff failed to comply with anti-litem notice requirements.  It is important to note that this defendant is not contending that Plaintiff did not provide the county with proper anti-litem notice of the claims against the county.  Rather, Defendant Fulton County attacks the sufficiency of the complaint filed in this action.  Defendant contends that because Plaintiff failed to set forth in the complaint allegations as to what notice Plaintiff asserts constitutes anti-litem compliance, the court should dismiss the lawsuit.  Plaintiff cites two state court cases:  *Sparks v. Floyd County*, 15 Ga. App. 80 (1914), and *Comm'rs of Roads and Revenue of Houston County v. Howard*, 59 Ga. App. 451 (1939).

Sufficiency of pleadings in the federal court is determined by Federal Rule of Civil Procedure 8(a).  Rule 8(a) requires that the complaint contain only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  A plaintiff need not plead specific facts for *every* element of a cause of action.  *See Roe v. Aware Woman Ctr. for Choice, Inc.,* 253 F.3d 678, 683 (11th Cir. 2001); *St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.,* 795 F.2d 948, 954 (11th Cir. 1986).  However, a complaint must

9

still contain either direct or inferential allegations respecting all *material* elements of a cause of action. *See Aware Woman Ctr.,* 253 F.3d at 684. "Thus, at a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the *material* elements necessary to sustain a recovery under some viable legal theory." *Id.* (emphasis added). The Georgia Court of Appeals has held that it is not absolutely mandatory that a plaintiff state in its complaint that it has satisfied anti-litem notice. *Nipper v. Crisp Co.*, 120 Ga. App. 583 (1969).

The court finds that under the liberal notice pleading requirements of Rule 8(a), a plaintiff need not specifically allege in the complaint in federal court that he complied with the anti-litem notice provision in order to raise a state law claim against a county.

### 3.    Sovereign Immunity

Pursuant to the 1991 amendment to the Georgia Constitution, "sovereign immunity extends to the state and all of its departments and agencies." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e). This immunity also extends to counties. *See Gilbert v. Richardson*, 264 Ga. 744, 747 (1994). "The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e). As Plaintiff has shown no evidence that this immunity has been

10

waived by an Act of the General Assembly, the court GRANTS Defendant Fulton County's motion for summary judgment on Plaintiff's state law claims against the county.

### D.   Defendant George R. King

#### 1.   Eleventh Amendment Immunity

The Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  To determine whether a defendant is immune from liability under the Eleventh Amendment, the Eleventh Circuit Court of Appeals has held that ". . . a defendant need not be labeled a "state officer" or "state official," but instead need only be acting as an "arm of the State," which includes agents and instrumentalities of the State."  *Manders v. Lee,* 338 F.3d 1304, 1308-09 (11th Cir. 2003) (citing *Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 429-30 (1997)).   In *Manders,* the Eleventh Circuit held that, with respect to use-of-force policy at a jail and in training and disciplining deputies concerning the policy, a sheriff is an "arm of the State" and not his or her particular county. *Manders*, 338 F.3d at 1328.

Based on the analysis found in *Manders,* where a sheriff is performing his official and authorized duties as a state actor, he is entitled to Eleventh Amendment immunity from a section 1983 claim for money damages or other retrospective relief brought against him

11

in his official capacity.  *See Purcell v. Toombs County,* 400 F.3d 1313, 1325 (11th Cir. 2005) (concluding that a Georgia Sheriff "functions as the arm of the State [not the County] when promulgating policies and procedures governing conditions of confinement" at a county jail, and, therefore, the Sheriff was "entitled to Eleventh Amendment immunity from [a] suit [for money damages] in his official capacity").

The Eleventh Circuit also acknowledged that Georgia Courts have concluded that sheriff's deputies are employees of the sheriff and not the county.  *Grech v. Clayton County*, 335 F.3d 1326, 1342 (11th Cir. 2003) (citing *Lowe v. Jones*, 231 Ga. App. 372, 373 (additional citations omitted).  In a line of cases interpreting *Manders,* the courts in this circuit have determined that when a sheriff is acting as an arm of the state, his deputies are also entitled to Eleventh Amendment immunity from suits for money damages in their official capacities.  *See Gates v. Jolley,* 2007 WL 106533 * 3 (M.D. Ga. Jan. 8, 2007); *Slater v. Henderson,* 2006 WL 1517068, *1 (M.D. Ga. May 24, 2006); *Bunyon v. Burke County,* 306 F. Supp. 2d 1240, 1255 (S.D. Ga. 2004); *Mladek v. Day,* 293 F. Supp. 2d 1297, 1304 (M.D. Ga. 2003).

With regard to the Plaintiff's excessive force claim, under *Manders*, when establishing and implementing force policies, the Fulton County Sheriff and therefore his deputies, act as arms of the state and are entitled to Eleventh Amendment immunity.  Thus,

Defendant King is immune to suit in his official capacity under the Eleventh Amendment with regard to Plaintiff's excessive force claim.

With respect to Plaintiff's medical care claim, however, the court is not persuaded that Defendant King is entitled to Eleventh Amendment immunity. The Eleventh Circuit repeatedly has held that whether a Georgia sheriff's authority is derived from the State or the county "must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Manders*, 338 F.3d at 1308-09.

Accordingly, the court cannot simply assume that because a county sheriff acts as an arm of the State with respect to conditions of confinement at the jail, he necessarily acts as an arm of the State with respect to the provision of medical care at the jail as well. Indeed, the *Manders* court took great pains to limit its holding to the particular functions at issue in that case and to distinguish those functions from the provision of medical care: "We stress that this case does not involve medical care, which counties have a statutory obligation to provide to inmates in county jails." 338 F.3d at 1323 n. 43 (citing O.C.G.A. § 42-5-2). In looking at the test set out in *Manders*, two district courts have determined that a Georgia sheriff acts as an arm of the county in providing medical care to inmates. *See Dukes v. Georgia*, 428 F. Supp. 2d 1298, 1319-22 (N.D. Ga., 2006) (Forrester J.); *Green v. Glynn County*, 2006 WL 156873, *3 (S.D. Ga. Jan.16, 2006) (Alaimo, J.). As a sheriff acts as an

13

arm of the county in providing medical care to inmates, his deputies are also arms of the county with regard to medical care claims.  Therefore, the court finds that Defendant King is not immune to suit in his official capacity under the Eleventh Amendment with regard to Plaintiff's medical care claim.

### 2.    Medical Care Claim

In his complaint, Plaintiff contends that after the excessive force and rape, Defendants denied Plaintiff reasonable or adequate medical treatment for his injuries.  The parties seem to be in dispute as to the proper standard applied to individuals who are incompetent to stand trial but are in jail awaiting placement in a mental facility.[6]

"[T]he involuntarily civilly committed have liberty interests under the due process clause of the Fourteenth Amendment to reasonably safe conditions of confinement, freedom from unreasonable bodily restraints, and such minimally adequate training as might be required to ensure safety and freedom from restraint."  *Lavender v. Kearney*, 2006 WL 2971325 *2 (11th Cir. October 18, 2006) (citing *Youngberg v. Romeo*, 457 U.S. 307, 322 (1982)).   The court in *Lavender* found that "the due process rights of the involuntarily

---

[6]Although Plaintiff never responds to Defendants' motion for summary judgment with regard to his deprivation of medical treatment and assistance claim, Plaintiff cites *Patten v. Nichols*, 274 F.3d 829 (4th Cir. 2001), for the principle that "denial-of-medical-care claims asserted by involuntarily committed psychiatric patients must be measured under . . . a 'professional judgment' standard."  Out of an abundance of caution, the court will interpret this as a contention by Plaintiff that this court should apply a "professional judgment" standard to Plaintiff's deprivation-of-medical-treatment-and-assistance claim.

civilly committed are at least as extensive as the Eighth Amendment rights of the criminally institutionalized, and therefore, relevant case law in the Eighth Amendment context also serves to set forth the contours of the due process rights of the civilly committed." *Id.* (citing *Dolihite v. Maughon,* 74 F.3d 1027, 1041 (11th Cir. 1996) (internal quotes omitted)). "Accordingly, for an involuntarily civilly-committed plaintiff to establish a § 1983 claim for violation of his due process rights, he must show that state officials were deliberately indifferent to a substantial risk to his safety." *Id.* (citing *Purcell,* 400 F.3d at 1319).

An "official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." *Lancaster v. Monroe County*, 116 F.3d 1419, 1425 (11th Cir. 1997).

> To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry . . . . First, a plaintiff must set forth evidence of an objectively serious medical need . . . . Second, a plaintiff must prove that the prison official acted with an attitude of "deliberate indifference" to that serious medical need.

*Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).   A "serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quotation and citation omitted).  The medical need "must be one that, if left unattended, poses a substantial risk of serious harm." *Id.*  Deliberate indifference has "three components:  (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk;

15

and (3) by conduct that is more than mere negligence." *Id.* at 1245-46 (quotation and citation omitted). Deliberate indifference can also be shown when a governmental officer intentionally delays providing a detainee with access to medical treatment knowing that the individual has an urgent medical condition that would be exacerbated by delay. *Lancaster*, 116 F.3d at 1425.

Here, Plaintiff has failed to set forth any evidence of an objectively serious medical need. In fact, Dr. Prystowsky, who examined Plaintiff, found no rectal bleeding, rectal pain, bruises or cuts. Further, Plaintiff has failed to offer any evidence that Defendant King had a subjective knowledge of any risk of serious harm. Therefore, the court finds that Plaintiff has failed to raise a material issue of fact with regard to his claim of deprivation of medical treatment and assistance. For the aforementioned reasons the court GRANTS Defendants' motion for summary judgment with regard to Plaintiff's claim of deprivation of medical treatment and assistance against Defendant King.

### 3.     Excessive Force

Plaintiff argues that Sheriff King violated his Fourteenth Amendment rights by using excessive force. "Claims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners." *Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005) (citing

16

*Cottrell v. Caldwell,* 85 F.3d 1480, 1490 (11th Cir. 1996)) (internal quotation marks omitted).[7]  But it makes no difference whether the courts looks to the Fourteenth or the Eighth Amendment because "the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving . . . pretrial detainees."  *Id.*

In the Eighth Amendment context, "whether or not a prison guard's application of force is actionable turns on whether that force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." *Id.* (citing *Brown v. Smith*, 813 F.2d 1187, 1188 (11th Cir. 1987)) (internal quotation marks omitted).  "To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response."  *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (internal citations omitted).

Notably, "[i]n this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the [Fourteenth] Amendment, because the use of

---

[7]Citing several out-of-circuit opinions, Plaintiff contends that he should not have to satisfy the Eighth Amendment test for excessive force but rather should be held to only a reasonably objective standard.  As Plaintiff's claim satisfies the more restrictive test under the Eighth Amendment, the court will not address the less restrictive test which Plaintiff argues should apply.  By applying the more difficult standard in this order the court is not determining at this time which standard should apply at trial.

force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* [*v. McMillan*, 503 U.S. 1, 7-8 (1992)], and *Whitley [v. Albers,* 475 U.S. 312 (1986) ]." *Skrtich*, 280 F.3d at 1300.

Viewing the evidence presented by the parties in the light most favorable to Plaintiff,[8] the court finds that Plaintiff's deposition testimony allows a reasonable inference to be drawn that Defendant King participated in treating Plaintiff in a malicious or sadistic way after he was restrained and for the very purpose of causing harm. Specifically, according to Plaintiff, Defendant King along with other deputy sheriffs handcuffed Plaintiff, forced him into a closet and forced a broom handle into his rectum. Assuming these facts are true, one could draw a reasonable inference that Defendant King's use of force was for the very purpose of causing harm. *See Bozeman*, 422 F.3d at 1272. As a result, Defendant King is not entitled to qualified immunity. *See id.* (noting that "where this kind of excessive force violation is established, there is no room for qualified immunity") (internal quotation marks omitted); *Skrtich,* 280 F.3d at 1303 ("By 1998, [Eleventh Circuit] precedent clearly

---

[8]Defendants contend that because Plaintiff has offered contradictory allegations about what occurred or when it actually occurred and because the testimony of the doctor who examined Plaintiff indicates that the doctor found no sign of trauma, this court should discount Plaintiff's testimony regarding the incident. In reviewing a motion for summary judgment, the court may not make credibility determinations or weigh the evidence. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254-55 (1986). Therefore, the court finds Defendants' contention that the court should discount Plaintiff's assertions altogether to be without merit.

established that government officials may not use gratuitous force against a prisoner who has been already subdued . . . .").

Therefore, the court DENIES Defendants' motion for summary judgment on Plaintiff's excessive force claim with respect to Defendant King.

## III.   Conclusion

The court GRANTS Defendants' motion for leave to file excess pages [33] and GRANTS-IN-PART and DENIES-IN-PART Defendants' motion for summary judgment [34].

The court DIRECTS the parties to file a pretrial order within thirty (30) days of the date of entry of this order

**IT IS SO ORDERED** this 21st day of June 2007.


_____s/ J. Owen Forrester_____
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

19